**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WALTER LEWIS, JR.**

                 **Petitioner,**

**v.**                                  **Civil Action No. 5:09cv104**
                                             **Criminal Action No. 5:07cr5-1**
                                             **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

                 **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On September 17, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody,[1] but no memorandum in support. The Government filed its response on October 22, 2009.[2] Petitioner replied on December 28, 2009.[3]

### II. Facts

**A.**     **Conviction and Sentence**

Petitioner was named in six counts of a thirteen-count indictment filed on February 6, 2007.[4] On March 23, 2007, petitioner signed a plea agreement, agreeing to plead guilty to Count Ten, possession with intent to distribute and distribute more than 5 grams of cocaine base, in violation

---

[1] Dkt.# 247.

[2] Dkt.# 254.

[3] Dkt.# 259.

[4] Dkt.# 1.

of Title 21, U.S.C. § § 841(a)(1) and 841(b)(1)(B).[5] The parties stipulated and agreed that

petitioner's total drug relevant conduct was between 150 to 500 grams of cocaine base. (Id. at 5).

In the plea agreement, the petitioner made a limited waiver of his right to appeal and to collaterally

attack his sentence. Specifically, the agreement states:

> 12. Mr. Lewis is aware that Title 18, United States Code, Section 3742 affords a
> defendant the right to appeal the sentence imposed. Acknowledging all this, and in
> exchange for the concessions made by the United States in this plea agreement, if the
> Court sentences defendant to 188 months or less, defendant knowingly and
> voluntarily waives the right to appeal his sentence or the manner in which that
> sentence was determined on any ground whatever, including those grounds set forth
> in Title 18, United States Code, Section 3742. The defendant also waives his right
> to challenge his sentence or the manner in which it was determined in any collateral
> attack, including but not limited to, a motion brought under Title 28, United States
> Code, Section 2255 (habeas corpus), where the sentence is 188 months or less.
> Correspondingly, the United States waives its right to appal if the Court sentences
> the defendant to 121 months or more. Neither of these ranges are representative of
> defendant's estimation of a reasonable sentence, nor does this waiver prevent
> defendant from arguing for a sentence below 121 months.

(Id. at 5).

On April 2, 2007, petitioner, then aged 47 and a high school graduate, entered his plea in

open court. (Dkt.# 214 at 4). Petitioner testified that he could read, write and understand English;

denied having taken any medication, drug or alcohol, other than his insulin[6] the evening before.

(Id. at 4 - 6). He denied any auditory or other impairment that would prevent his full participation

in the hearing. (Id. at 5). He admitted to having been treated for cocaine and alcohol addiction in

the past, in 1982 and 1989, but testified he had been "clean and sober since then." (Id.). During

the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of

the plea agreement, including the paragraph 12 *supra*. (Id. at 6 - 11). The Court specifically asked

---

[5] Dkt.# 102 at 1.

[6] Petitioner testified that he had taken his usual evening dose of 15 units of Nova 70-30 insulin.

petitioner if he understood the limited waiver of his appellate and post-conviction relief rights contained in his plea agreement and petitioner indicated that he did. (<u>Id</u>. at 13 and 17). The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated that they had. (<u>Id</u>. at 12).

The Court then informed petitioner that the maximum sentence for the crimes which he was pleading would be imprisonment for a mandatory minimum period of 5 years to no more than 40 years maximum; a fine of $2,000,000; and a term of at least four years of supervised release (<u>Id</u>. at 14 - 15). The Court advised petitioner that the ultimate sentence he received could be greater than that estimated by his counsel. Petitioner indicated that he understood. (<u>Id</u>. at 18). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report ("PSR") was completed and petitioner indicated his understanding of that fact. (<u>Id</u>. at 16 - 17 and 25). The Court then summarized the rights that petitioner was giving up by pleading guilty. (<u>Id</u>. at 18 - 20). To establish a factual basis for the plea, the Government presented the testimony of Sergeant Brian L. Allen of the West Virginia State Police, assigned to the Bureau of Criminal Investigation. (<u>Id</u>. at 21 - 24). The petitioner did not contest the factual basis of the plea.

After the factual basis for the plea was presented, the petitioner entered his plea. The Court asked petitioner if he was in fact guilty of the crime charged and petitioner admitted he was. (<u>Id</u>. at 25 - 26). The Court asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (<u>Id</u>. at 40). The Court further asked petitioner whether he thought that there was anything he thought that his lawyer had left undone that he thought his lawyer should have done on his behalf and petitioner denied that there was. (<u>Id</u>. at 25). At the conclusion of the hearing, the

Court determined that: petitioner was competent; he had made his plea freely and voluntarily, with full understanding of its consequences; that there was a basis for the plea; and all elements of the crime had been established. (Id. at 26). Petitioner did not object to the Court's finding.

On December 6, 2007, petitioner appeared before the court for sentencing.[7] He was found to have a total offense level of 34, which was base offense level of 32, plus two levels for obstruction of justice. (Id. at 30). His criminal history category was IV, based upon seven criminal history points, but his prior felonies made him a career offender, and therefore, a criminal history category of VI. The Court made tentative findings that the guidelines called for a sentencing range of 262 to 327 months imprisonment, four to five years of supervised release, and a recommended fine range of seventeen thousand five hundred dollars ($17,500.00) to two million dollars ($2,000,000.00). (Id. at 13 - 14). Neither party objected to the Court's tentative findings.

Petitioner invoked his right of allocution. (Id. at 31). The Court then heard argument from counsel. Defense counsel presented several letters from petitioner's family that were made exhibits to the record, and asked the Court to give petitioner credit for time served and to recommend the 500-hour drug program. The Government recommended a sentence at the lower end of the Guideline. Taking all necessary information into consideration, the Court sentenced petitioner to serve a total term of 262 months imprisonment, the lowest end of the Guideline range, to be followed by four years supervised release. (Id. at 33 -34). The Court recommended that petitioner participate in the five hundred hour intensive substance abuse treatment program. (Id. at 36). The Court then advised petitioner that, pursuant to ¶ 12 of his plea agreement, he had only waived his

---

[7] Petitioner's sentencing had originally been set for June 18, 2007, but defendant failed to appear. An arrest warrant was issued. Petitioner was located in Mansfield, OH on August 6, 2007, arrested and brought back to this jurisdiction.

appellate and habeas corpus rights if he received a sentence of 188 months or less. Because his sentence was 262 months, he had retained his right to appeal and seek post-conviction relief. The Court explained the process for filing an appeal in *forma pauperis*. (Id. at 37).

## B.  Direct Appeal

On December 13, 2007, petitioner filed a Notice of Appeal. (Dkt.# 211). On appeal, he contended that the District Court erred by declining to give him credit for acceptance of responsibility, given his decision to plead guilty.

On June 20, 2008, the judgment of the District Court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 228). Mandate issued on July 14, 2008. (Dkt.# 230). Petitioner did not petition for a writ of *certiorari* with the United States Supreme Court.

## C.  Other Collateral Proceedings

On May 9, 2008, petitioner filed a *pro se* motion for retroactive application of the sentencing guidelines to crack cocaine offense, pursuant to 18 U.S.C. § 3582(c)(2). (Dkt.# 225). The motion was denied by Order entered on July 1, 2008.[8]

## D.  Federal Habeas Corpus

### Petitioner's Contentions (Dkts.# 247)

Petitioner raises three grounds of ineffective assistance of counsel, reorganized here for clarity:

1) trial counsel was ineffective for inducing petitioner to plead guilty, when the majority of the counts in the indictment could not be prosecuted in Federal Court;

2) appellate counsel was ineffective for not raising as grounds for appeal the violation of

---

[8] Petitioner filed a Notice of Appeal of the District Court's Order on July 25, 2008. (Dkt.# 231). The Fourth Circuit Court of Appeals affirmed the District Court's decision on October 20, 2008 in an unpublished *per curiam* opinion. (Dkt.# 237).

petitioner's due process rights that occurred when the District Court gave him a enhancement for obstruction of justice, because it increased his sentence far beyond the sentence he could receive for violating an obstruction of justice statute; and

3) appellate counsel was ineffective for not filing a petition for writ of *certiorari* with the U.S. Supreme Court, after being directed to do so by petitioner.

Petitioner states that he did not raise his claims previously because they were ineffective assistance of counsel claims, not properly brought on direct appeal.

As relief, he requests that: 1) his plea be withdrawn and/or his sentence be reduced, [and/or] he be granted a "new trial." (Dkt.# 247 at 12).

### Government's Response (Dkt.# 254)

The Government contends that petitioner's § 2255 motion must fail because:

1) the petition is untimely;

2) petitioner was charged with violating the Controlled Substances Act, a federal statute, and the acts were committed within the Northern District of West Virginia, so this Court does have jurisdiction;

3) petitioner never affirmatively advised his counsel of his desire to file a petition for writ of *certiorari* until the time for its filing had expired;[9]

4) petitioner's sentencing guideline range was based upon his career offender status, not on the enhancement for obstruction of justice or the calculation of the drug relevant conduct under §2D1.1.

### Petitioner's Reply (Dkt.# 259)

Petitioner reiterates his § 2255 motion claims and raises two new claims, contending that he:

1) requested that appellate counsel prepare and submit a petition for writ of *certiorari* by

---

[9] In support, the Government attaches, as Exhibit 2 to its response, an October 14, 2009 affidavit from defense counsel, along with: a copy of a June 23, 2008 letter from counsel to petitioner, enclosing a copy of a blank form "Notice to Defense Counsel;" a copy of an October 3, 2008 letter from counsel to petitioner; and copies of three Notices of Electronic Filing ("NEF"), dated July 25, 2008 at 4:03 pm, July 25, 2008 at 4:04 pm, and July 31, 2008 at 3:09 pm, respectively, all referencing a notice of appeal by petitioner.

signing and returning a "Notice to Counsel,"[10] instructing him to do so, but counsel failed to follow through;

2) counsel was ineffective for permitting him to be sentenced as a career offender; and

3) counsel, who served as both trial and appellate counsel, withheld exculpatory and impeachment material, which could have been used at trial, for plea purposes, or on appeal.

**E.**     **Recommendation**

Based upon a review of the record, the undersigned recommends that petitioners § 2255 motion be denied and dismissed from the docket, but that the District Court advise the Fourth Circuit Court of Appeals that petitioner's appellate counsel did not file a petition for writ of *certiorari* as instructed by petitioner.

## III. <u>Analysis</u>

**A.**     **Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.**     **Whether Petitioner's §2255 Motion is Timely**

In 1996, the Anti-Terrorism and Effective Death Penalty Act of f1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus

---

[10] Petitioner attaches a copy of a form "Notice of Counsel," with the choice "I wish to petition to the United States Supreme Court" checked. The form bears petitioner's signature and the date of June 26, 2008.

motion.  28 U.S.C. §2255.[11]

The limitation period shall run from the last of:

1.      The date on which the judgment of conviction becomes final;

2.      The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.      The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[12] or

4.      The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255.

In most cases, a judgment of conviction becomes final when the time for filing a direct appeal expires.  Aikens v. U.S., 204 F.3d 1086, 1089, n. 1 (11th Cir. 2000).  There are two recognized exceptions to this general rule, which apply when a federal prisoner seeks direct appellate review of his conviction or sentence. First, if following the disposition of his direct appeal, a federal prisoner files a petition for writ of *certiorari* with the U.S. Supreme Court, the conviction becomes final when the Supreme Court either denies *certiorari* or issues a decision on the merits. See Washington v. U.S., 243 F.3d 1299, 1300 (11th Cir. 2001).  Second, if the federal prisoner does not file a timely *certiorari* petition after disposition of his direct appeal, the conviction becomes final on the date on which the prisoner's time for filing such petition expires, which is ninety days after

---

[11] The AEDPA applies to those cases filed after April 24, 1996, the effective date of the AEDPA.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied*, 523 U.S. 371 (1998).

[12] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive. Dodd v. United States, 545 U.S. 353, 125 S.Ct. 2478 (2005).

the entry of judgment on direct appeal.  See Clay v. U.S., 537 U.S. 522, 532, 123 S. Ct. 1072; 155 L. Ed. 2d 88

 (2003).

For federal prisoners, the time for filing a direct appeal expires fourteen days after the written judgment of conviction is entered on the criminal docket.  See Fed. R. App. P. 4(b)(1)(A)(i) and 4(b)(6).  Here, on June 20, 2008, the Fourth Circuit Court of Appeals affirmed the District Court's decision.  Because petitioner did not file a petition for writ of *certiorari* with the United States Supreme Court, his judgment of conviction became final when the time for seeking such review expired, or on September 20, 2008.  Therefore, he had until September 20, 2009 to file his habeas corpus petition under AEDPA.  Petitioner's § 2255 motion was filed on September 21, 2009.  However, the certificate of service on the petition was dated September 16, 2009 and the envelope it was mailed in was post-marked September 18, 2009, indicating that petitioner timely deposited his motion in the prison's mailing system.  See Fed. R. App. P. 4(c)(1); See also Washington v. U.S., *supra* at 1301 (holding that a prisoner's pro se § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing).  Accordingly, petitioner's § 2255 motion is timely.

C.     **Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness."  Strickland at 688.  The second prong requires the petitioner to show that the deficient performance prejudiced the defense.  Id. at 687.  In order to satisfy the prejudice

requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**<u>Ground One</u>: Whether Trial Counsel was Ineffective for Inducing Petitioner to Plead Guilty, When the Majority of the Counts in the Indictment could not be Prosecuted in Federal Court.**

For reasons that remain unclear, without citing any law, facts or argument in support, petitioner contends that this Court had no jurisdiction to prosecute him on the instant drug charges, and that counsel was ineffective under the circumstances for 'inducing' his plea to the same.

Petitioner was charged with multiple violations of the federal Controlled Substances Act ("CSA"), passed by Congress in 1970. The CSA is the federal U.S. drug policy under which the manufacture, importation, possession, use and distribution of certain substances is regulated. The

offenses petitioner was charged with are codified in 21 U.S.C. §§ 846; 843(b); and two counts of violating 21 U.S.C.§ 841(a)(1). He pled guilty to Count Ten, possession with intent to distribute more than five grams of cocaine base, a violation of 21 U.S.C.§ 841(a)(1). Because all of the acts petitioner was charged with were violations of federal law and were committed within the Northern District of West Virginia, jurisdiction in this Court was proper.

Petitioner's claim has no support in fact or law. Furthermore, at his plea hearing, petitioner specifically denied that his plea had been "induced" and indicated his complete satisfaction with his attorney's performance. (Dkt.# 214 at 24 - 25).

Petitioner's claim that counsel was ineffective for "inducing" his plea in this Court when the Court had no jurisdiction fails. Jurisdiction was proper and petitioner himself denied under oath that anyone had induced his plea. Counsel cannot be found deficient for failing to object when there was no basis to do so and where objection would be futile. Since petitioner can prove neither deficient performance or prejudice, he has failed in his burden under Strickland and this claim should be denied.

Further, petitioner's claim in this regard is merely an unsupported allegation and as such, is insufficiently pled. Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999).

**Ground Two: Whether Trial Counsel was Ineffective for Withholding Exculpatory and Impeachment Material.**

In his reply, for the first time, petitioner alleges that counsel was ineffective for withholding

discovery material from him.   He contends that he requested all exculpatory and impeachment material in any form that might be beneficial "in presenting his defense or innocence at trial/appeal which ever the purpose may be."  (Dkt# 259 at 3).  He alleges that counsel "refused to release . . . important information concerning co-defendant [sic] NCIC and 62 pages of discovery, which could have been used in trial or appeal proceedings."  (Id. at 4).

To the extent petitioner is arguing that defense counsel should have provided him with Brady[13] material, petitioner has failed to identify that there was in fact, any exculpatory Brady material to provide.

To the extent that petitioner is arguing that counsel should have provided him with Jencks[14] material, petitioner has failed to identify that there was in fact, any Jencks material to provide.

Moreover, petitioner had five co-defendants.  He does not identify which co-defendant's NCIC he is suggesting was withheld, or what it might have provided in aid of his defense.  He has not explained how he was prejudiced by the alleged failure of counsel to provide this information.   Again, petitioner's claim in this regard is merely an unsupported allegation and as such, is insufficiently pled. Habeas petitions must meet heightened pleading requirements.  McFarland v. Scott, *supra* at 856.

Petitioner has neither proved counsel was ineffective in this regard, nor has he shown he was prejudiced.  As such, he has failed in his burden under Strickland.  Relief should be denied.

**Ground Three: Whether Trial Counsel was Ineffective after the Plea and Sentencing, for Permitting Petitioner to be Improperly Sentenced  as a Career Offender.**

In his reply, again for the first time, petitioner contends that counsel performed unreasonably

---

[13] Brady v. Maryland, 373 U.S. 83; 83 S. Ct. 1194; 10 L. Ed. 2d 215 (1963) (holding that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution).

[14] The Jencks Act, 18 U.S.C. § 3500.

when he failed to challenge petitioner's prior felony drug convictions, since those crimes had not yet been "finalized" and thus could not qualify as predicate offenses for a career offender enhancement.

Chapter Four - Part B - "Career Offenders and Criminal Livelihood" of the U.S.S.G. staes, in pertinent part:

(a) A defendant is a career offender if

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offenders criminal history category in every case under this subsection shall be Category VI.

U.S.S.G. 4B1.1.

Petitioner's PSR reveals that in 1999, when he was thirty-nine years old, he pled guilty to robbery. (Dkt.# 207, ¶ 58 at 13). In 2004, when he was forty-five, he pled guilty to, *inter alia*, two counts of possession with intent to deliver a controlled substance. (Id., ¶ 61 at 14). All of the predicate offenses were convictions in Allegheny County Court of Common Pleas, Pittsburgh, PA. As such, when he committed the instant crime and was charged with possession with intent to distribute 5 grams or more of crack cocaine, he qualified as a career offender and received an enhanced base offense level for sentencing purposes.

Here, petitioner admits that although he had entered a guilty plea to the prior drug felonies

*before* being sentenced on the instant charges, he had filed a "motion to withdraw the plea, until my Federal Sentence was final which is a move usually used in order to keep enhancements away from small sentences to huge harsh ones in which I still received."  (Dkt# 259 at 2).  He attaches as Exhibit B to his reply, a copy of an October 6, 2008 sentencing transcript, wherein the Allegheny County Court of Common Pleas denied his motion to withdraw his guilty plea to the Pennsylvania drug felonies.[15] (Dkt.# 259-2 at 10 - 11). Petitioner contends that "[d]o [sic] to my plea withdrawal motion being denied the plea was not voluntarily entered."  (Dkt.# 259 at 3).

United States Sentencing Guidelines, Chapter Four, Part A, "Criminal History," states, in pertinent part:

4A1.2. Definitions and Instructions for Computing Criminal History

(a) Prior Sentence
(4) Where a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under 4A1.1(c) if a sentence resulting from that conviction otherwise would be countable. In the case of a conviction for an offense set forth in 4A1.2(c)(1), apply this provision only where the sentence for such offense would be countable regardless of type or length. "Convicted of an offense," for the purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

U.S.S.G. 4A1.2(a)(4).

The sentencing transcript from the Allegheny County Court of Common Pleas that petitioner attaches at Exhibit B indicates that he signed his plea agreement on the prior Pennsylvania drug felonies some time in December, 2006.  (Dkt.# 259-2 at 7).  His PSR indicates that he pled guilty to those charges on December 13, 2006 and his sentence for them was pending at the time his PSR

---

[15] He was sentenced to not less than 36 and not more than 72 months on each of the two felony drug charges, to be served concurrently with one another and concurrently with any other sentence he was then serving in any other jurisdiction.  He was already serving his present sentence on the instant charges at the time.

was prepared. (Dkt.# 207, ¶ 61 at 14). The instant charges were committed "[f]rom a date uncertain but at least May, 2006, to on or about January 25, 2007[.]" (Dkt.# 1 at 1) and petitioner was indicted for them on February 26, 2007. As such, the prior Pennsylvania drug felonies "counted" for purposes of determining petitioner's career offender status, because petitioner's guilt for them had already been established by guilty plea.

Petitioner was forty-five years old when he committed the two prior drug felonies, and forty-seven when he committed the instant offense. Because the prior felonies were controlled substance offenses, along with his prior crime of violence (robbery), under U.S.S.G. 4B1.1, they qualify as predicate career offender crimes. Therefore, defense counsel had no basis to challenge any of his prior felony convictions and cannot be faulted for failing to do so. "Counsel need not chase wild factual geese when it appears, in light of informed professional judgement, that a defense is implausible or insubstantial." Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983). Petitioner has neither proved that counsel was ineffective in this regard, nor can he prove prejudice. Relief should be denied.

**Ground Four: Whether Appellate Counsel was Ineffective for Failing to Raise as Grounds for Appeal the Violation of Petitioner's Due Process Rights that Occurred when the District Court Enhanced his Sentence for Obstruction of Justice.**

Petitioner contends that appellate counsel was ineffective for not choosing as grounds for appeal the fact that his due process rights were violated when the District Court enhanced his sentence for obstruction of justice, because it increased his sentence far beyond what he would have received if he had violated an obstruction of justice statute.

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally

demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Here, the record reveals that despite being aware that his appearance at sentencing was required, and being required by conditions of his bond to remain within the jurisdiction, petitioner fled the state after his plea hearing. He failed to appear at his sentencing hearing. He was arrested seven weeks later in Ohio and returned to West Virginia. At his re-scheduled sentencing hearing,

after his PSR had been revised to include an assessment of a two-level adjustment for obstruction of justice for failure to appear, pursuant to U.S.S.G. § 3C1.1 and a recommendation that he be denied a reduction for acceptance of responsibility for the same reason, petitioner failed to file any objections to the same. At sentencing, after petitioner apologized for absconding and failing to appear, the Court adopted the PSR, imposed the recommended two-level enhancement for obstruction of justice for failure to appear, and for the same reason, declined to credit him with acceptance of responsibility, pursuant to U.S.S.G. § 3E1. Petitioner offered no objections. (Dkt.# 214 at 29).

Petitioner's claim fails. Petitioner's revised PSR reveals that his Base Offense Level was 32 for relevant conduct of at least 150 grams but less than 500 grams of cocaine base, using the new crack amendment guidelines of U.S.S.G. § 2D1.1. The two-level enhancement for obstruction of justice resulted in a Total Offense Level of 34. (Dkt.# 207, ¶ 47 at 8). His criminal history category would have been IV, but because he had at least two qualifying prior felony drug or violent crime convictions, he was determined to be a career offender, and his criminal history then became VI. (Id., ¶ 64 at 15). With his prior felonies, after his plea, he faced a minimum mandatory sentence of not less than 5 nor more than 40 years, with a guideline range of 262 to 327 months. Because he was a career offender, pursuant to § 4B1.1(b)(B), his offense level could be no less than 34, which, as his probation officer correctly noted, "results in the same [adjusted offense] level as calculated above." (Id., ¶ 46 at 8). Accordingly, contrary to petitioner's claim otherwise, the obstruction of justice enhancement did not result in a sentence "far beyond what he would have received if he had violated and obstruction of justice statute." The obstruction of justice enhancement had absolutely no effect on the sentence he received; his sentence was driven by the determination of his status as

a career offender.

Clearly, here, appellate counsel examined the record with a view to selecting the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4ᵗʰ Cir. 1989). Since this issue lacked merit, it is not surprising that appellate counsel did not choose it as grounds for appeal. Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7ᵗʰ Cir. 1986). Petitioner cannot claim that counsel was ineffective in not raising an issue on appeal when there was no issue to raise. See Smith v. Robbins, 528 U.S. 259, 288 (2000). Ergo, this claim fails.

**Ground Five: Whether Appellate Counsel was Ineffective for Failing to File a Petition for Writ of Certiorari on Petitioner's Behalf.**

Petitioner contends that he directed appellate counsel to file a petition for writ of *certiorari* on his behalf, but that counsel failed to do so, or alternatively, counsel failed to withdraw so that petitioner could petition for a writ of *certiorari* himself, *pro se.* He alleges that because counsel informed him that he would "take specific action concerning the filing of review in the Supreme Court and did not, movant missed filing." (Dkt.# 247 at 5).

In his reply, petitioner cites Wilkins v. U.S.,[16] 441 U.S. 468, 99 S.Ct. 1829, 60 L.Ed.2d 365 (1979) in support of his claim. He contends that after he "asked his counsel to submit a Petition for Certiorari . . . but counsel sent back the signer [sic] form. After knowing that Petitioner wanted him to file by doing so the lawyer caused my time to expire." (Dkt. 259 at 2). He attaches a copy of a

---

[16] Wilkins v. U.S. (holding that pursuant to the Criminal Justice Act of 1964, 18 U.S.C. §§ 3006A(c), 3006A(d)(6), and 3006A(g), a person whose federal conviction has been affirmed is entitled to a lawyer's help in seeking *certiorari*. The remedy available to a petitioner whose court-appointed attorney fails or refuses to file timely petition for writ of *certiorari* after being directed to do so in writing by his client, is to grant *certiorari*, vacate the judgment, and remand the case to the Court of Appeals, so that a timely petition for *certiorari* to review the appellate judgment can be filed).

form "Notice to Defense Counsel" on which the choice *"I wish to petition to the United States Supreme Court"* is checked, signed by him and dated June 26, 2008.

As relief, he requests that a new judgment be entered and he be appointed counsel to petition the U.S. Supreme Court for a writ of *certiorari.*

The appellate record reveals that approximately three months after the opinion on petitioner's appeal was issued, petitioner sent a undated letter to the Clerk of the Fourth Circuit Court of Appeals, docketed on September 25, 2008,[17] which was addressed "Dear: Federal Public DeFender" [sic] stating:

> I need to know who is my attorney on my appeal with the Fourth Circuit on my writ of certiorari. Franklin W. Lash was the attorney on my federal case and my direct appeal. He send [sic] me a Notice to Defense Counsel form. Cause he [sic] filing that with the Fourth Circuit this was on June 23, 2008 and I had not heard from no one. So if there anyway [sic] that you can get me the name of the attorney on my appeal. I would appreciate it if you could with an address [sic] . . .

(4th Cir. Dkt.# 24) (08-4066).

Defense counsel's October 14, 2009 affidavit on the issue reads, in pertinent part:

> 1. On June 23, 2008, I wrote Walter Lewis[18] to inform him that the Fourth Circuit Court of Appeals had affirmed his conviction and sentence I [sic] the District Court. (Unsigned copy of the letter attached). In this letter, I informed Mr. Lewis that I did not think he had grounds to appeal to the United States Supreme Court but if he wanted a petition filed he should indicate so on the enclosed Notice to Counsel (unsigned copy attached), sign and return that document to me.

---

[17] September 25, 2008 was five days after the expiration of the 90-day period in which petitioner could have sought to petition for a writ of *certiorari.*

[18] Counsel's June 23, 2008 letter to petitioner referenced an enclosed a copy of the Fourth Circuit Court of Appeals' opinion denying petitioner's appeal. In it, counsel advises petitioner that he did not believe petitioner had grounds for rehearing *en banc,* explains that there is no right to appeal to the U.S. Supreme Court but that he could petition for writ of *certiorari* if he wished, but that counsel did not think he would be successful. Counsel quoted Rule 10 of the Rules of the United States Supreme Court, explaining that petitioner's case did not meet its requirements, and enclosed a copy of a "Notice to Defense Counsel" form, directing petitioner to indicate which option (petition for writ of *certiorari* or not) he wanted and return it to him and he would "file that with the Fourth Circuit and move to withdraw so they can appoint someone else." (Dkt.# 254-1 at 41 - 42).

2.  Before July 25, 2008, Mr. Lewis returned the Notice to Counsel, signed but not indicating whether he wanted to appeal or not.  (Unable to locate copy at this time).  I intended to write Mr. Lewis and have him check the appropriate choice, when I received notice of the filing of an appeal by the cm/ecf [sic] electronic filing system.  (Notices referencing documents 232, no document attached, and 234 are attached to this affidavit).  These Notices referred to a Notice of Appeal by Walter Lewis which apparently was document 231 of which I was not directly notified or served.  Document 234 referred to a new appeal number 08-7284.

3.  At that time, it appeared to me that Mr. Lewis had filed a pro se appeal without serving me, and I did not send the Notice of Counsel back to him or take any further steps to withdraw or file a petition with the Supreme Court.

4.  The next communication by Mr. Lewis which I received was a copy of his letter to the Fourth Circuit asking why he had not been appointed new counsel.  On October 3, 2008, I wrote to Mr. Lewis[19] and advised him as to what I felt had

---

[19] Counsel's October 3, 2008 letter to petitioner explains:

I recently received a copy of your letter to the Fourth Circuit.  You will recall the Fourth Circuit affirmed the decision of the District Court on June 20, 2008.  This started the clock running on the 90-day appeal period to the Supreme Court. The Fourth Circuit issued its Mandate (meaning the period for rehearing had passed) on July 14, 2008 (copy attached).

I wrote you on June 23, 2008, to tell you the Court had decided against you and to explain your right to petition the Supreme Court to be allowed to appeal to them (copy attached).  ***I sent you a Notice to Counsel form which you signed but did not indicate your preference as to whether you wanted to appeal or not (copy attached).***

Before I could write back to you and request you complete the Notice to Counsel, I received a Number of Notices of Electronic Filing (copies attached).  These Notices appear to indicate that you or someone on your behalf, filed a Notice of Appeal at the District court in Wheeling (the proper procedure would have been to file in the Fourth Circuit and to serve me with a copy).  For some reason the electronic filing system will not allow me to access document number 232 which was the envelope in which this appeal was received.  You will also see that the Notice of July 31, 2008, indicates a different appeal number than your case which I briefed. It appeared to me that you had gone ahead and filed your own Notice of Appeal so that you could petition the Supreme Court.

The next thing I heard was your query to the Fourth Circuit about why you had not been appointed counsel. If you filed your own appeal then it was up to you to ask for appointed counsel.  I had not done so because it appeared to me that you did file our own appeal.

In any case the 90-day time limit for filing a petition with the Supreme Court has passed.  As I indicated in my June 23rd letter to you, it was unlikely the Supreme Court would have allowed you to appeal.  At this late date there is no way they would accept any filing.

Your option now is to file for a writ of habeas corpus, which I cannot do for you.  I am sorry you are serving such a long sentence.

(Dkt.# 254-1 at 44 - 45) (emphasis added).

happened and what his rights were at that time. (Copy of letter and attachments, except for copy of signed Notice to Counsel, attached).

5. I heard no more of this matter until the Assistant United States Attorney, John Parr, notified me of the filing of Mr. Lewis' habeas corpus motion and requested I file an affidavit explaining what happened.

(Dkt.# 254-1 at 39 - 40).

The Fourth Circuit addressed the issue of appellate counsel's failure to carry out a defendant's request to file a petition for writ of *certiorari,* in U.S. v. Smith, 321 Fed. Appx. 229, 2008 WL 4951657, holding that Smith's § 2255 motion would be treated as a motion to withdraw the mandate, permitting the earlier judgment to be vacated and re-entered, allowing for the timely petition for writ of *certiorari.*

Here, while it appears from the record that there may be a dispute as to whether petitioner did in fact indicate on the "Notice of Counsel" that he signed and returned to counsel that he wanted to petition for writ of *certiorari,* it is apparent that at least at the time that counsel wrote his October 3, 2008 letter to petitioner, counsel did have in his possession his copy of the 'unchecked' Notice of Counsel that petitioner had signed and returned. Counsel admits petitioner returned the "Notice of Counsel" after signing it. Counsel does not appear to know exactly when petitioner returned it, only that it was some time after he sent it to him on June 23, 2008 and "before July 25, 2008." Counsel can no longer produce this copy, showing that petitioner did not indicate his wishes, and

the copy of the "Notice of Counsel" that petitioner attaches as Exhibit A to his reply, shows that the choice of filing a petition for writ of *certiorari* was checked, purportedly on the date petitioner says he signed it, or June 26, 2008, when there was still nearly three months left in which to petition for writ of certiorari. Counsel's affidavit indicates that although he intended to contact petitioner to clarify his wishes, but as of the end of July, 2008, still had not, and then he was misled by the receipt of the NEF on the ECF system into thinking petitioner had filed his own appeal. Counsel did not take the final step of verifying whether in fact petitioner wanted a petition for writ of *certiorari* filed; did not return the "Notice of Counsel" to petitioner to complete; did not verify with petitioner that he had filed his own petition for writ of *certiorari*; and did not withdraw from representation. Accordingly, the interests of justice require that petitioner be given an opportunity to file his petition for writ of *certiorari*. However, only the Fourth Circuit can recall the mandate. It is recommended that the District Court advise the Fourth Circuit of this situation so that it can take any action that it deems appropriate.

### V. <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion (Dkt.# 247) and **DISMISSING this case with prejudice**, but that the Court advise the United States Court of Appeals for the Fourth Circuit that petitioner's appellate counsel did not file a petition for writ of *certiorari* to the United States Supreme Court as instructed.

Further, petitioner's requests that:

1) his plea be withdrawn;

2) his sentence be reduced; and/or

3) that he be granted a "new trial,"

should be all be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the opinion/report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: February 9, 2011

/s/ *James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE